**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| | ) | |
| **ARTAVIOUS LOVE**, *et al.*, | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| v. | ) | **Case No. 24-cv-2571 (APM)** |
| | ) | |
| **BUREAU OF PRISONS**, *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

**MEMORANDUM OPINION AND ORDER**

## I.     INTRODUCTION

Since 1997, the Federal Bureau of Prisons (BOP) has housed individuals convicted of and sentenced for felonies in D.C. Superior Court ("D.C. Code Offenders").  When an individual enters the BOP's custody, the BOP must decide the appropriate security level at which to house them.  One factor in that determination is the individual's "criminal history score," which is meant to indicate the individual's dangerousness based on their prior offenses.  But D.C. Code Offenders differ from their federal counterparts when it comes to the information the BOP receives about their criminal histories.  Individuals sentenced in federal court will have had criminal history points calculated under rules set forth in the U.S. Sentencing Guidelines ("Guidelines") and memorialized in their sentencing records, which the BOP then automatically converts to its own criminal history score for purposes of determining housing.  Individuals sentenced in D.C. Superior Court also are assessed a criminal history score, but that score is calculated under the District of Columbia Sentencing Guidelines, which uses a different scoring system that is not automatically convertible.

The BOP instead relies on an alternative criminal history scoring system laid out in an internal program statement.

This alternative scoring system, however, counts numerous offenses that the Guidelines do not.  As a result, D.C. Code Offenders generally receive higher criminal history scores and are placed in higher-security facilities more frequently than their federal counterparts.  Plaintiff Artavious Love, a D.C. Code Offender, sued the BOP, the Director of the Bureau of Prisons, and the Attorney General of the United States to challenge this unequal scoring system on behalf of himself and a class of all present and future D.C. Code Offenders.  Plaintiff alleges that this scoring system violates both the Administrative Procedure Act (APA) and the Fifth Amendment's guarantee of equal protection.

Before the court are Plaintiff's Motion for Class Certification & Appointment of Class Counsel, ECF No. 4 [hereinafter Pl.'s Class Cert. Mot.], Plaintiff's Motion for Summary Judgment, ECF No. 42 [hereinafter Pl.'s Mot. for Summ. J.], and Defendants' Cross-Motion to Dismiss or, in the Alternative, for Summary Judgment, ECF No. 47 [hereinafter Defs.' Mot.]. For the reasons explained below, the court certifies Plaintiff's proposed class of D.C. Code Offenders and concludes that the challenged scoring system is arbitrary and capricious in violation of the APA.  Accordingly, the court grants Plaintiff's Motions for Class Certification and Summary Judgment and denies Defendants' Cross-Motion.

## II.    BACKGROUND

### A.    Factual Background

In early 2020, the D.C. Superior Court sentenced Plaintiff to a term of imprisonment for a violation of D.C. law.  Class Action Compl. for Declaratory & Injunctive Relief, ECF No. 1 [hereinafter Compl.], ¶ 79.  Because Plaintiff was convicted of a felony, he was to serve his

sentence in federal custody.  *See* National Capital Revitalization Self-Government Improvement Act, Pub. L. No. 105-33, Title XI, § 11201(b), 111 Stat. 251, 734 (1997) [hereinafter Revitalization Act].  Under the Revitalization Act, Plaintiff and other D.C. Code Offenders "shall be subject to any law or regulation applicable to persons committed for violations of laws of the United States consistent with the sentence imposed."  *Id.*

Upon entering the BOP's custody, the BOP had to determine where to house him.  The BOP makes such determinations based on various statutorily mandated factors, including bed availability and other resource constraints; the individual's security designation; the individual's programmatic, medical, and faith-based needs; "the nature and circumstances of the offense"; and "the history and characteristics of the prisoner."  18 U.S.C. § 3621(b).  The BOP can place an individual into a facility classified at one of five security levels: Minimum, Low, Medium, High, and Administrative.  *Love v. Bureau of Prisons*, No. 24-cv-2571 (APM), 2025 WL 105845, at *2 (D.D.C. Jan. 15, 2025).

To determine where to place Plaintiff, the BOP relied on Program Statement 5100.08 ("PS 5100.08"), an internal policy issued in 2006 for making housing decisions.  *See* J.A. of the Administrative R., ECF No. 52, App., ECF No. 52-1 [hereinafter J.A.], at 3.  PS 5100.08 directs the BOP to calculate an individual's "security point score."  *Id.* at 10–11.  All else equal, a greater security point score corresponds with placement in a higher-security facility.  *See id.*  The score is based on a variety of inputs, including "voluntary surrender, the severity of current offense, history of violence, history of escape or attempts, type of detainer, age, education level, drug and alcohol abuse, and criminal history score."  *Love*, 2025 WL 105845, at *2 (internal quotation marks omitted).  The last of these factors, the criminal history score, "is the highest weighted."  Pl.'s Mot. for Summ. J., Ex. E, Decl. of Jack T. Donson, ECF No. 42-6 [hereinafter Donson Decl.], at 2; *see*

3

*also* J.A. at 43.  It can increase an individual's security point score by up to ten points, which can alone be the difference between a low- and high-security facility.  *See Love*, 2025 WL 105845, at *2.

The BOP does not calculate every individual's criminal history score the same way. For most, the BOP takes the number of criminal history points assigned under the Guidelines— as found in the final judgment, statement of reasons, or Presentence Investigation Report ("PSR")—and converts it into a corresponding security-point value. J.A. at 35.  But as PS 5100.08 acknowledges, some individuals who enter the BOP's custody do not receive criminal history points under the Guidelines.  *Id.*  This includes individuals convicted under the D.C. Code or military code, in custody for state offenses, or incarcerated for federal crimes committed prior to November 1, 1987.  *Id.*  For those individuals, the BOP obtains a criminal history report from the FBI and uses it to calculate a criminal history score.  *Love*, 2025 WL 105845, at *3.  The calculation is made as follows:

> (a) Add 3 points for each prior sentence of imprisonment exceeding one year and one month;
> (b) Add 2 points for each prior sentence of imprisonment of at least sixty days not counted in (a);
> (c) Add 1 point for each prior conviction not counted in (a) or (b), up to a total of 4 points for this item; and
> (d) Add 2 points if the instant offense is a revocation accompanied by a new state or federal conviction, or if the instant offense occurred while under federal supervision including incarceration, probation, parole or supervised release.

J.A. at 35–36.  The BOP then takes the resulting number of points and converts it into a corresponding security-point value.  *See id.* at 35–36.[1]

There are several differences between PS 5100.08's criminal history scoring rules and those found in the Guidelines.  Pl.'s Mot. for Summ. J., Ex. C, Suppl. Decl. of Brent E. Newton Concerning BOP's PS 5100.08's Criminal History Score Provision, ECF No. 42-4 [hereinafter Newton Suppl. Decl.], at 6.  The Guidelines assess no points to a host of prior convictions, including (1) "prior sentences for convictions that were imposed on the same day or included in the same charging instrument as the instant offense resulting in the incarceration in the BOP (and were not separated by an intervening arrest)"; (2) certain "stale" prior convictions; (3) juvenile convictions; (4) misdemeanor convictions; (5) "a prior conviction that encompassed 'relevant conduct' to the instant offense that resulted in the prisoner's current incarceration"; (6) suspended sentences; or (7) tribal court convictions and certain military convictions.  *Id.*  PS 5100.08's scoring system does *not* exclude these categories of convictions.  *Id.*  Additionally, under PS 5100.08, an individual receives two additional points if the instant offense either "occurred while under federal supervision including incarceration, probation, parole, or supervised release" or "is a revocation accompanied by a new state or federal conviction." *Id.* at 6–7.  As of 2023, the Guidelines no longer impose the same.  *See id.* at 6 n.11.[2]

---

[1] Regardless of the method used to calculate an individual's criminal history points, the conversion to a security-point value works as follows:

| 8. CRIMINAL HISTORY SCORE | 0 = 0-1  2 = 2-3 | 4 = 4-6  6 = 7-9 | 8 = 10-12  10 = 13 + | |
|---|---|---|---|---|
| 8a. SOURCE OF DOCUMENTED CRIMINAL HISTORY | – PRESENTENCE INVESTIGATION REPORT  _____ – NCIC III | | | |

J.A. at 35.

[2] The current Guidelines are both narrower and less punitive when it comes to federal defendants who receive additional points for having committed an offense while on supervision.  *See* U.S.S.G. § 4.1.1(e).  Only defendants with seven or more criminal history points are subject to an increase, and even then by only one point.  *Id.*

Because Plaintiff is a D.C. Code Offender, the BOP scored his criminal history using PS 5100.08's method. Compl. ¶ 82. The BOP assigned him ten criminal history points, which converted to eight security points. *Id.*; *see also supra* n.1. Had Plaintiff's criminal history score been calculated under the Guidelines, he would have been assigned five criminal history points, *see* Newton Suppl. Decl. at 12, which would have converted to four security points, J.A. at 35. The BOP initially placed Plaintiff in a high-security facility but later moved him to a medium-security facility. Pl.'s Mot. for Summ. J., Ex. D, Decl. of Artavious Love, ECF No. 42-5 [hereinafter Love Decl.], ¶¶ 1–3.

Plaintiff is not the only D.C. Code offender who has received a higher score under PS 5100.08's scoring system than if scored pursuant to the Guidelines. Plaintiff's expert opined that the counting of stale convictions, misdemeanors, suspended sentences, some related convictions, and certain juvenile convictions "likely implicate[s] many D.C. Code offenders' prior convictions used by BOP officials in assessing their criminal history score under the program statement's rules." Pl.'s Mot. for Summ. J., Ex. A, Decl. of Brent E. Newton Concerning BOP's PS 5100.08's Criminal History Score Provision, ECF No. 42-2, at 8. As a result, "application of the program statement's criminal history calculus generally will result in a higher criminal history score than application of [the Guidelines'] rules." *Id.* Importantly, Defendants do not contest this conclusion. In fact, they offer nothing to rebut any of Plaintiff's experts.

These higher scores have consequences. As of 2020, D.C. Code Offenders were over three times more likely to be placed in a high-security facility than the BOP population at large. Br. of Amici Curiae The Washington Lawyers' Committee for Civil Rights and Urban Affairs and Other Groups in Supp. of Pls., ECF No. 21, at 15 (citing Council for Court Excellence, *Analysis of BOP Data Snapshot from July 4, 2020 for the District Task Force on Jails & Justice* 4 fig. 6 (Sep. 30,

6

2020), https://perma.cc/82WB-GFBH).  At the same time, individuals not convicted under the D.C. Code were over twice as likely to be placed in low-security facilities and over sixteen times as likely to be placed in minimum-security facilities when compared to D.C. Code Offenders.  *Id.* When placed in a higher-security facility, individuals face a greater risk of violence.  Donson Decl. at 3; Pl.'s Mot. for Summ. J., Ex. B, Decl. of Nathan Winshall, ECF No. 42-3, ¶ 7.  And the increased security measures in those facilities result in more solitary time in cells, as well as less programming, visitation, and work opportunities.  Donson Decl. at 3; Love Decl. ¶¶ 12–13.

A higher criminal history score also raises an individual's Prisoner Assessment Tool Targeting Estimated Risk and Needs ("PATTERN") score.  Donson Decl. at 4.  The BOP uses this score to assess an individual's risk of recidivism.  *Id.*  "Most of the PATTERN data points correlate directly from" the security-point assessment tool, so the criminal history score is again "the highest weighted variable."  *Id.*  A higher PATTERN score is consequential.  It makes individuals ineligible to earn time credits that can be applied toward early release and makes it more challenging to secure post-conviction relief.  *Id.*

## B. Procedural History and Later Factual Developments

On September 9, 2024, Plaintiff and another individual in the BOP's custody, Diamante Butler, sued to challenge PS 5100.08's criminal-history scoring system for D.C. Code Offenders. Compl. at 1–5.  The complaint asserts that the scoring system (1) is arbitrary and capricious, contrary to law,[3] and contrary to a constitutional right in violation of the APA, *id.* ¶¶ 132–150, and (2) violates the right to fair and equal treatment under the Fifth Amendment, *id.* ¶¶ 151–157.  The complaint also alleges that the APA required the BOP to promulgate PS 5100.08 through notice-

---

[3] Specifically, Plaintiff asserts that the BOP's disparate scoring system violates the Revitalization Act, which guarantees equal treatment of those laws and regulations applicable to federal offenders to D.C. Code Offenders.  *See* § 11201(b), 111 Stat. at 734; *supra* Section II.A.

7

and-comment rulemaking, which it failed to do.  *Id.* ¶¶ 158–162.  The same day, Plaintiff moved

both to certify a class of D.C. Code Offenders who are or will be affected by the challenged system,

Pl.'s Class Cert. Mot., and to preliminarily enjoin Defendants from continuing to use the system,

Pl.'s Mot. for a Prelim. Inj., ECF No. 2.  Shortly thereafter, Defendants moved to dismiss the case.

Defs.' Mot. to Dismiss, ECF No. 28.

Following a hearing on the motions, the court denied Plaintiff's motion for a preliminary

injunction for failure to show irreparable harm.  *Love*, 2025 WL 105845, at *5–8.  The court also

granted in part and denied in part Defendants' motion to dismiss.  It held that both named plaintiffs

had standing to challenge the scoring policy.  *Id.* at *8–9.  But it dismissed Butler's claim for

failure to exhaust administrative remedies.  *Id.* at *9–10.  The court rejected Defendants'

arguments that the court was statutorily barred from reviewing Plaintiff's claims and that Plaintiff

failed to state a plausible claim for relief.  *Id.* at *11–13.

On March 6, 2025, the BOP unexpectedly re-calculated Plaintiff's criminal history score.

Defs.' Mem. of P. & A. in Opp'n to Pl.'s Class Cert. Mot., ECF No. 45 [hereinafter Defs.' Opp'n],

Decl. of Jerry U. Smith, ECF No. 45-1 [hereinafter Smith Decl.], ¶ 6.  The BOP purportedly did

so "pursuant to its revised Program Statement that is nearing finalization," *id.*, although the court

is not aware that any such statement has been published over a year later.  The BOP assigned

Plaintiff five criminal history points, which converts to four security points.  *See id.*  The new

security-point score qualified Plaintiff for placement in a low-security facility, but he remained in

a medium-security one.  *Id.* ¶ 7.

Just over one year later, Plaintiff notified the court that the D.C. Court of Appeals had

vacated his Superior Court sentence and remanded the case for resentencing.  Pl.'s Notice,

ECF No. 54, at 1.  Plaintiff indicated that he expected to be released from the BOP's custody upon

resentencing. *Id.* As far as the court can tell, Plaintiff is no longer in the BOP's custody as of April 15, 2026. *See* Bureau Inmate Locator, https://www.bop.gov/inmateloc/ (last visited June 15, 2026).

## III.    DISCUSSION

Before proceeding to the merits, the court begins with Defendants' argument that this case is moot, as mootness is a "threshold jurisdictional issue." *S. Co. Servs., Inc. v. FERC*, 416 F.3d 39, 43 (D.C. Cir. 2005) (citation omitted). Because the court concludes that Plaintiff has a live claim, it then considers the motion for class certification before turning to the parties' cross-motions for summary judgment.[4]

### A.    Mootness

A case is moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (citation omitted). This occurs "only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Id.* (internal quotation marks omitted). "As long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot." *Id.* (internal quotation marks omitted).

Defendants argue that Plaintiff's claim is moot because, after rescoring him, the BOP had assigned him the criminal history score he believed he would have received under the Guidelines. *See* Defs.' Mot., Defs.' Combined Mem. of P. & A. in Supp. of Defs.' Mot. & in Opp'n to Pl.'s Mot. for Summ. J., ECF No. 47-1 [hereinafter Defs.' Mem.], at 14. Therefore, they reason, there

---

[4] Defendants also renew their argument that judicial review of Plaintiff's housing-related claims is statutorily barred. Defs.' Mot., Defs.' Combined Mem. of P. & A. in Supp. of Defs.' Mot. & in Opp'n to Pl.'s Mot. for Summ. J., ECF No. 47-1, at 16–21. The court has already rejected this argument, *see Love*, 2025 WL 105845, at *11–12, and will not revisit it here. *See Kimberlin v. Quinlan*, 199 F.3d 496, 500 (D.C. Cir. 1999) ("The law-of-the-case doctrine rests on a simple premise: the *same* issue presented a second time in the *same case* in the *same court* should lead to the *same result*." (internal quotation marks omitted)).

is no longer an injury for the court to redress.[5]  *See id.* at 14–15.  The court assumes without deciding that the rescoring mooted Plaintiff's *individual* claim.

In a putative class action, however, the mootness of a named plaintiff's individual claim does not necessarily moot the entire case.  In general, "at least one named plaintiff must keep [their] individual dispute live until certification."  *J.D. v. Azar*, 925 F.3d 1291, 1307 (D.C. Cir. 2019).  But in certain cases, the court may "'relate [a] certification motion back' to a date when the individual claims were live."  *Id.* (alteration in original) (quoting *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 71 (2013)).  One such case is when a plaintiff's claim is "inherently transitory"—when it is "by no means certain" that the claim "will persist long enough for [the court] to adjudicate class certification."  *Id.* at 1308, 1310.  This doctrine requires the court to consider "(i) whether the individual claim might end before the district court has a reasonable amount of time to decide class certification, and (ii) whether some class members will retain a live claim at every stage of litigation."  *Id.* at 1311.

Both requirements are met here.  As to the first, "[t]he claims at issue likely will, or at least might, end quickly."  *Id.*  As this case demonstrates, the BOP can choose to rescore a D.C. Code Offender at any time.  Plaintiff filed this lawsuit on September 9, 2024.  The BOP rescored him on March 6, 2025.  Smith Decl. ¶ 6.  Plaintiff's claim was therefore live for approximately six months, which fits comfortably within the timeframes to which this exception has been applied.  *See, e.g.*, *Lewis v. U.S. Parole Comm'n*, 743 F. Supp. 3d 181, 194–95 (D.D.C. 2024) (approximately six months); *J.D.*, 925 F.3d at 1311 (citing *Nielsen v. Preap*, 586 U.S. 392 (2019))

---

[5] In their opening brief, Defendants frame this issue as one of standing.  Defs.' Mem. at 14.  Because they assert that Plaintiff no longer has a redressable claim based on events *after* this litigation began, their argument is more appropriately considered one of mootness.  *See Brookens v. Am. Fed'n of Gov't Emps.*, 315 F. Supp. 3d 561, 567–68 (D.D.C. 2018).  Defendants acknowledge this in their reply brief, reframing their argument accordingly.  *See* Defs.' Reply in Further Supp. of Defs.' Mot., ECF No. 51, at 1.

(one year).  Moreover, the inherently transitory exception is "particularly fitting" in a case like this where "*defendants* create 'a significant possibility that any single named plaintiff would be [dismissed] prior to certification.'" *Jonathan R. ex rel. Dixon v. Justice*, 41 F.4th 316, 326 (4th Cir. 2022) (alteration in original) (quoting *Olson v. Brown*, 594 F.3d 577, 582 (7th Cir. 2010)); *see also Unan v. Lyon*, 853 F.3d 279, 287 (6th Cir. 2017).  Here, the BOP "quickly and unilaterally grant[ed] relief" to Plaintiff just one month before Defendants filed their opposition to class certification and cross-motion for summary judgment, relying in part on mootness.  *Unan*, 853 F.3d at 287; *see* Defs.' Opp'n; Defs.' Mot. (both filed April 8, 2025).  Plaintiff's claim thus satisfies the first requirement.

Defendants respond that, unlike the cases in which this exception has been applied, Plaintiff "complains of a purported injury that has persisted for years."  Defs.' Reply in Further Supp. of Defs.' Mot., ECF No. 51 [hereinafter Defs.' Reply], at 4.  They note that Plaintiff has "repeatedly complained that the Bureau has taken too long to make the changes that he seeks ordered in this case."  *Id.*  But Defendants' argument "misapprehends the exception."  *Dixon*, 41 F.4th at 325. What "matters most" is that the "lifespan" of the claim "cannot be ascertained at the outset," such that it is uncertain whether the court could decide a certification motion in time.  *See id.* (quoting *Gerstein v. Pugh*, 420 U.S. 103, 110 n.11 (1975)).  "Even if *some* [class members] will spend a long-enough period in the system, requiring Plaintiffs to predict *which* [class member] will asks too much."  *Id.* at 326.  *Lewis* provides an apt analogy.  There, the court applied the exception because, notwithstanding that "each of the four named plaintiffs in this case allegedly went several years without receiving their parole hearing," "once named as a plaintiff, each of the four parolees had their parole terminated within about six months."  *Lewis*, 743 F. Supp. 3d at 194.  Similarly, the exception applies here because of the relative quickness and lack of predictability with which

11

Defendants may—and did—extinguish Plaintiff's individual claim after he filed suit. *See id.* at 194–95; *Nielsen*, 586 U.S. at 404.[6]

Defendants do not contest the second requirement. *See* Defs.' Reply at 3–4 (disputing only the first). At least some D.C. Code Offenders will continue to serve their sentences over the course of this litigation, so there will be class members who retain a live claim at each stage. Both requirements of the exception are accordingly satisfied, so this case is not moot.[7]

### B.      Class Certification

The court turns next to Plaintiff's motion for class certification. Plaintiff seeks to certify a class of "[a]ll individuals who were or will be sentenced by the Superior Court of the District of Columbia for D.C. code felony offenses and who are or will be in the custody of the Bureau of Prisons." Pl.'s Class Cert. Mot. at 1.

Federal Rule of Civil Procedure 23 governs class certification. Plaintiff's proposed class must meet all four of Rule 23(a)'s requirements: numerosity, commonality, typicality, and adequacy. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011). It must also meet at least one of Rule 23(b)'s requirements. *Id.* Plaintiff relies on Rule 23(b)(2), which applies when a class seeks injunctive relief. *Id.* at 345–46; *see* Pl.'s Class Cert. Mot., Mem. of P. & A. in Supp. of Pl.'s Class Cert. Mot., ECF No. 4-1 [hereinafter Pl.'s Class Cert. Mem.], at 11–12.

---

[6] Although Defendants have not argued as such, Plaintiff's release from custody likely would independently moot his individual claim. But even if the court assumes that Plaintiff's release from custody is the proper time at which to evaluate whether the inherently transitory exception applies, it still does. In *Gerstein*, the Court noted that the length of custody—although in that case pretrial custody—"cannot be ascertained at the outset" in that "it may be ended at any time by" events as distant as "acquittal or conviction after trial." 420 U.S. at 110 n.11. Likewise, Plaintiff's early release from the BOP's custody approximately one-and-a-half years after filing suit satisfies the exception. Once again, it is not the precise amount of time that is determinative, but rather the uncertainty of the length of time for which Plaintiff's claim may be live such that a court may not reasonably be able to certify the class before the claim is extinguished. *Cf. Mons v. McAlaneen*, No. 19-cv-1593 (JEB), 2019 WL 4225322, at *7 (D.D.C. Sep. 5, 2019) ("Months of detention may feel unbearably lengthy to those being detained but represent a mere moment in the arena of civil litigation.").

[7] Because Plaintiff's claim satisfies the "inherently transitory" exception to mootness, the court does not consider the voluntary cessation or "picking off" exceptions. *See* Pl.'s Opp'n to Defs.' Mot. & Reply in Supp. of Pl.'s Mot. for Summ. J., ECF No. 48, at 7, 17; Defs.' Reply at 1–5.

1.     *Rule 23(a)*

a.     Numerosity

First, the class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Defendants do not dispute that the proposed class meets this requirement. Defs.' Opp'n at 11. The approximately 3,200 members in Plaintiff's proposed class—those D.C. Code Offenders presently in the BOP's custody—are sufficiently numerous. Pl.'s Class Cert. Mem. at 5; *see, e.g.*, *Bynum v. District of Columbia*, 214 F.R.D. 27, 32 (D.D.C. 2003) ("Generally speaking, courts have found that a proposed class consisting of at least forty members will satisfy the impracticability requirement." (collecting cases)).

b.     Commonality

Next, there must be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). In practice, this means class members must have "suffered the same injury" so that their claims "depend on a common contention." *Wal-Mart*, 564 U.S. at 349–350 (internal quotation marks omitted). And that common contention must be "capable of classwide resolution," such that "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* at 350. So the court's focus is not only on common questions, but also "the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.* (citation omitted).

This case presents such a common question: the lawfulness of the challenged scoring system. "'[A] uniform policy or practice that affects all class members' in the same way clearly gives rise to common questions of fact or law." *Healthy Futures of Tex. v. Dep't of Health & Hum. Servs.*, 326 F.R.D. 1, 7 (D.D.C. 2018) (quoting *DL v. District of Columbia*, 713 F.3d 120, 128 (D.C. Cir. 2013)). All D.C. Code Offenders suffer the same injury when the BOP calculates

13

their criminal history score pursuant to PS 5100.08.  True, different class members will be impacted differently, including some perhaps not at all.  But the challenged method of calculation is uniformly applied, even if the inputs and outputs vary.  *See Stephens v. Farmers Rest. Grp.*, 329 F.R.D. 476, 483 (D.D.C. 2019) ("[F]actual variations among the class members will not defeat the commonality requirement, so long as a single aspect or feature of the claim is common to all proposed class members." (quoting *Bynum*, 214 F.R.D. at 33)); *Damus v. Nielsen*, 313 F. Supp. 3d 317, 332 (D.D.C. 2018) (same).  And because the scoring system is legal as applied to either all class members or none, the court "would be deciding in one fell stroke whether or not the agency practice that allegedly injured the putative class members was legally permissible."  *Healthy Futures*, 326 F.R.D. at 7.  The commonality requirement therefore is "clearly" satisfied.  *Id.* (citing cases).

Defendants disagree, citing "the breadth of [Plaintiff's] proposed class definition."  Defs.' Opp'n at 19.  They note that the proposed class encompasses "individuals who may never be in the custody of the [BOP] until some future event"—their conviction and sentencing—occurs.  *Id.* So, they say, "it is difficult to ascertain who does not potentially fall within [the class] definition," which means the "definition is too broad to allow this Court to determine that commonality is met."[8]  *Id.* at 19–20.  But it is not "at all unusual or improper for a Rule 23(b)(2) class to include future members."  *O.A. v. Trump*, 404 F. Supp. 3d 109, 160 (D.D.C. 2019) (citing cases); *see also Tataranowicz v. Sullivan*, 959 F.2d 268, 272–73 (D.C. Cir. 1992).  And determining when individuals become members of the class "does not require complicated or individualized determinations."  *O.A.*, 404 F. Supp. 3d at 160.  Rather, the determination is based on "clear and

---

[8] Whether Rule 23 contains an ascertainability requirement is an open question in this circuit.  *See J.D.*, 925 F.3d at 1320.  But at least for Rule 23(b)(2) classes, some courts have suggested that "the precise membership" of the class is "largely inconsequential" because uniform injunctive relief would "naturally" affect all class members.  *See id.* (citing cases); *see also DL v. District of Columbia*, 302 F.R.D. 1, 17 (D.D.C. 2013), *aff'd*, 860 F.3d 713 (D.C. Cir. 2017).

objective criteria": individuals "will only become members of the class *if and when*" they are sentenced by a D.C. court and placed in BOP custody. *Id.* Any individual who meets these easily observable qualifications will be subject to the challenged scoring system, which would injure them in the same manner. The inclusion of future members thus does not complicate the court's determination as to commonality. *See Tataranowicz*, 959 F.2d at 272 (noting issues with classes that would encompass individuals "who *never would* present a claim," as opposed to individuals for whom a claim "had not yet" accrued but "ultimately" would).

c.      <u>Typicality</u>

Third, Rule 23(a) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). This requirement "ensures that the named plaintiffs are appropriate representatives of the class whose claims they wish to litigate." *Thorpe v. District of Columbia*, 303 F.R.D. 120, 147 (D.D.C. 2014) (quoting *Wal-Mart*, 564 U.S. at 349). "Generally speaking, typicality is satisfied when the plaintiffs' claims arise from the same course of conduct, series or events, or legal theories of other class members." *Hoyte v. District of Columbia*, 325 F.R.D. 485, 490 (D.D.C. 2017) (citation omitted). "Importantly, the facts and claims of each class member do not have to be identical to support a finding of typicality; rather, typicality refers to the nature of the claims of the representative, not the individual characteristics of the plaintiff." *Id.* (cleaned up).

Typicality is satisfied here. The BOP calculated Plaintiff's criminal history score using the same method applied to all D.C. Code Offenders. His claims challenging that policy thus "arise from the same course of conduct" and are based on the same "legal theories of other class members." *Gutierrez v. Noem*, No. 25-cv-1766 (SLS), 2025 WL 3496390, at *9 (D.D.C. Dec. 5, 2025) (internal quotation marks and citation omitted); *see also Healthy Futures*, 326 F.R.D. at 7.

15

Defendants argue that typicality is not satisfied because "Plaintiff is subject to a unique defense": his individual claim is moot. *See* Defs.' Opp'n at 12. According to Defendants, this renders him "atypical of the putative class" and "will skew the litigation away from the merits of the claims and refocus it on determining whether he possesses a concrete injury." *Id.* at 13–14. The court has already disposed of Defendants' mootness argument. True, "the defense need not ultimately be successful to defeat typicality." *Id.* at 11. But having been resolved prior to certification, it is not "supportable" going forward and does not "create a danger that absent class members will suffer because their representative is preoccupied with defenses unique to it." *Coleman ex rel. Bunn v. District of Columbia*, 306 F.R.D. 68, 83 (D.D.C. 2015). It therefore does not affect the typicality of Plaintiff's claims.

### d. Adequacy

Finally, the court must ensure that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To satisfy this requirement, (1) "the named representative must not have antagonistic or conflicting interests with the unnamed members of the class," and (2) "the representative must appear able to vigorously prosecute the interests of the class through qualified counsel." *Twelve John Does v. District of Columbia*, 117 F.3d 571, 575 (D.C. Cir. 1997) (internal quotation marks omitted).

*Class Representative.* For the same reasons the court found Plaintiff's claims are typical of the class, the court finds that he will adequately represent it. *See Wal-Mart*, 564 U.S. at 349 n.5 (noting that typicality and adequacy "tend to merge" as they apply to class representatives, as they both contemplate "whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence" (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157–58 n.13 (1982))). Plaintiff's interest in

challenging the legality of Program Statement 5100.08 aligns with those of absent class members who seek relief from the same unequal scoring system. In other words, "[Plaintiff] and the other class members all presumably want the same thing," and "the Court can see foresee no 'fundamental' disagreements that go to the heart of the litigation at issue in this case." *Healthy Futures*, 326 F.R.D. at 8 (citation omitted).

Unsurprisingly, then, Defendants' same challenge to Plaintiff's adequacy—that his individual claim is moot—likewise fails. *See* Defs.' Opp'n at 14–15. "[T]he very existence of the inherently-transitory exception disproves any suggestion that the mootness of a plaintiff's claims necessarily demonstrates [his] inadequacy as a representative." *J.D.*, 925 F.3d at 1313. And other than "noting the mootness" of Plaintiff's individual claims, Defendants identify "no reason to doubt [Plaintiff's] ability to vigorously press the action." *Id.* After being rescored, Love averred that, "[e]ven though my points have been changed, I want to keep fighting on behalf of the class because the criminal history points policy is detrimental to my community and unfair to my peers coming into the BOP. It is prejudiced, biased, and discriminatory and should not stand." Pl.'s Reply in Supp. of Pl.'s Class Cert. Mot., ECF No. 50 [hereinafter Pl.'s Class Cert. Reply], Ex. A, Decl. of Artavious Love, ECF No. 50-1 [hereinafter Love Decl. II], ¶ 12. His declaration of continued commitment to advancing this case on behalf the class assures the court that he will adequately represent it. *See P.J.E.S. ex rel. Escobar Francisco v. Wolf*, 502 F. Supp. 3d 492, 533 (D.D.C. 2020).

*Counsel.* To evaluate the adequacy of class counsel, the court turns to Rule 23(g). The court must consider "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the

resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A). The court may also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B).

Plaintiff's counsel, lawyers from the Public Defender Service for the District of Columbia, will adequately represent the class. Counsel have represented Plaintiff either since initiating this lawsuit or shortly thereafter, suggesting they did the work to "identif[y] or investigat[e] potential claims in [this] action." Fed. R. Civ. P. 23(g)(1)(A)(i).

Counsel's experience also makes them "competent to manage a class action and the underlying legal claims the lawsuit seeks to advance." *Healthy Futures*, 326 F.R.D. at 8 (internal quotation marks omitted); *see also* Fed. R. Civ. P. 23(g)(1)(A)(ii)–(iii). Ms. Friedland and Ms. Yan have each represented class plaintiffs in multiple detention-related cases. *See* Pl.'s Class Cert. Reply, Ex. B, Decl. of Zoe Friedland, ECF No. 50-2, ¶¶ 4, 6. In some, Ms. Friedland served as lead counsel. *Id.* ¶ 4. Ms. Ansari-Bayegan also "has extensive experience in complex litigation." *Id.* ¶ 7. And those three lawyers plus Ms. Naini have substantial experience representing individuals incarcerated in the BOP for D.C. Code offenses and are thus familiar with the applicable law. *See id.* ¶¶ 4–8.

Defendants respond that Plaintiff cannot point to any case in which counsel "successfully obtain[ed] class-wide relief as sole class counsel." *See* Defs.' Opp'n at 15–16. But Defendant offers no authority for this requirement. Certainly, no such limitation is found in the text of Rule 23(g). Both the rule and the courts that have applied it focus more generally on counsel's experience with class actions and the applicable law. *See* Fed. R. Civ. P. 23(g)(1)(A)(ii)–(iii); *see, e.g.*, *Gutierrez*, 2025 WL 3496390, at \*9. The court is satisfied that Plaintiff's counsel has sufficient experience with each.

18

Lastly, counsel can and will devote sufficient resources to representing the class. *See* Fed. R. Civ. P. 23(g)(1)(A)(iv). Defendants fault Plaintiff for being "silent" on this requirement in his initial submission. Defs.' Opp'n at 16–17. Yet they do not provide any evidence to suggest that counsel cannot devote the necessary resources to this case. In fact, the record plainly shows the opposite. Since the start of this case, counsel has engaged in substantial motions practice. Plaintiff timely moved for a preliminary injunction, class certification, and summary judgment, as well as opposed Defendants' motions to dismiss and for summary judgment. Moreover, the Public Defender Service has a history of litigating class actions, including some as sole class counsel, without apparent resource constraints. *See, e.g.*, *N.S. v. Hughes*, 335 F.R.D. 337, 354 (D.D.C. 2020) ("[T]he Court has no concerns about the ability of the Public Defender Service to litigate this case."), *modified on clarification sub. nom.*, *N.S. v. Dixon*, No. 20-cv-101 (RCL), 2020 WL 6701076 (D.D.C. Nov. 13, 2020); *see also Lewis v. U.S. Parole Comm'n*, No. 22-cv-2182-RCL (D.D.C.) (sole class counsel); *Mathis v. U.S. Parole Comm'n*, No. 24-cv-1312-TNM (D.D.C.) (with co-counsel); *Banks v. Booth*, No. 20-cv-849-CKK (D.D.C.) (with co-counsel). The court therefore finds that Plaintiff's counsel will adequately represent the class.[9]

### 2. Rule 23(b)(2)

The putative class must also meet one of the requirements of Rule 23(b). Plaintiff relies on Rule 23(b)(2), which provides for class treatment when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P.

---

[9] As a final challenge to counsel's adequacy, Defendants speculate as to the sufficiency of counsel's communication with clients, opposing counsel, and the court in a different case. *See* Defs.' Opp'n at 17–18 (citing Fed. R. Civ. P. 23(g)(1)(b)). The court will not credit such speculation. And Plaintiff's statement that, "[t]hroughout this litigation, my lawyers have scheduled regular legal calls and kept me updated about every development and filing" assures the court that counsel will fulfill its duty to communicate with the class. Love. Decl. II ¶ 13.

23(b)(2); *see* Pl.'s Class Cert. Mem. at 11–12.  "The key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted . . . ."  *Wal-Mart*, 564 U.S. at 360 (internal quotation marks omitted).  A (b)(2) class is therefore appropriate when "a single injunction or declaratory judgment would provide relief to each member of the class."  *Id.*  This entails two requirements: "(1) the defendant's action or refusal to act must be 'generally applicable to the class'; and (2) plaintiffs must seek final injunctive relief or corresponding declaratory relief on behalf of the class."  *Disability Rights Council of Greater Wash. v. Wash. Metro. Area Transit Auth.*, 239 F.R.D. 9, 28 (D.D.C. 2006) (internal quotation marks omitted).

Both are satisfied.  The challenged scoring system applies to all D.C. Code Offenders—in other words, all members of the class.  And Plaintiff seeks a declaration that the scoring system is unlawful, vacatur of PS 5100.08, and an injunction preventing Defendants from continuing to apply the policy to class members.  *See* Compl. at 31–32.  This relief is "indivisible," as it will simultaneously provide relief to all D.C. Code Offenders without requiring individualized relief.  *See Disability Rights Council*, 239 F.R.D. at 28; *Gutierrez*, 2025 WL 3496930, at *11.  A (b)(2) class is therefore appropriate.

Defendants raise the same objection to certification of a (b)(2) class that they do to commonality.  They argue that Plaintiff "is unable to show that an injunctive order can be applied to the class as a whole due to the class's broad, indefinite in scope definition."  Defs.' Opp'n at 20.  They provide two examples.  First, they state that "the putative class consists of people for whom no relief ever need be afforded by this Court until future contingencies come to pass."  *Id.* at 21.  This contention fails for the reasons already described.  If and when individuals become members of the class in the future, any relief as to the governing policy will apply to them just the same.  *See supra* Section III.B.1.b.  Second, Defendants state, "[t]he putative class definition also

encompasses a subset of people who were previously convicted of a D.C. Code felony offense, and subsequently entered [BOP] custody for a federal offense—and thus would not even be subject to the challenged scoring methodology because they would have received a criminal history points calculation from the federal pre-sentences report." Defs.' Opp'n at 20. This reasoning relies on a strained reading of the proposed class definition. The class definition logically applies only to those in custody *pursuant* to a D.C. Superior Court sentence and thus subject to the challenged scoring system. To erase any doubt, however, the court will accept Plaintiff's suggestion to exercise its authority to clarify the class definition accordingly. *See* Pl.'s Class Cert. Reply at 17 (citing *Borum v. Brentwood Vill., LLC*, 324 F.R.D. 1, 8 (D.D.C. 2018)).

With all of Rule 23's requirements satisfied, the court grants Plaintiff's motion and certifies the following class: All individuals who were or will be sentenced by the Superior Court of the District of Columbia for D.C. Code felony offenses and who are or will be in the custody of the Bureau of Prisons pursuant to such sentence. Plaintiff Artavious Love shall serve as class representative, and the Public Defender Service for the District of Columbia shall be appointed class counsel.

### C.     Merits

The court finally proceeds to the merits. Under the APA, the court must "set aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). "[S]ummary judgment is the mechanism for deciding whether as a matter of law an agency action is supported by the administrative record and is otherwise consistent with the APA standard of review." *Louisiana v. Salazar*, 170 F. Supp. 3d 75, 83 (D.D.C. 2016). But instead of deciding whether there is a genuine dispute of material fact under Federal Rule of Civil Procedure 56, the district court "sits as an appellate tribunal," *Am. Biosci., Inc. v.*

21

*Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001), and determines "whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did," *Sierra Club v. Mainella*, 459 F. Supp. 2d 76, 90 (D.D.C. 2006) (internal quotation marks omitted).

The court starts and ends its analysis with whether the challenged scoring system is arbitrary and capricious. "Under the arbitrary and capricious standard [the court] look[s] to see if the agency has examined relevant data and has articulated a rational explanation for its action." *Eagle-Picher Indus., Inc. v. EPA*, 759 F.2d 905, 921 (D.C. Cir. 1985). Agency action is therefore arbitrary and capricious if the agency either "entirely failed to consider an important aspect of the problem" or otherwise failed to offer a rational basis for its decision. *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). The court is not to "substitute [its] judgment for that of the agency." *Steel Mfrs. Ass'n v. EPA*, 27 F.3d 642, 646 (D.C. Cir. 1994). But it must ensure that "the agency's decisions reflect reasoned decisionmaking." *Id.* The BOP's decision here does not.

The BOP failed to consider the disproportionately harsh impact of the two-tiered scoring system on D.C. Code Offenders. Plaintiffs and amici have offered substantial evidence demonstrating that, as a result of PS 5100.08's more stringent scoring system, D.C. Code Offenders generally receive higher criminal history scores than their federal counterparts. *See supra* Section II.A. D.C. Code Offenders are accordingly placed in higher-security facilities more often. *Id.* This placement, in turn, results in increased exposure to violence and decreased programming, visitation, and work opportunities. *Id.* Yet the administrative record is silent as to this differential treatment or its impacts. *See generally* J.A.

Even now, Defendants do not provide contrary evidence nor attempt to explain the need for harsher scoring. *See Nat. Res. Def. Council, Inc. v. Rauch*, 244 F. Supp. 3d 66, 91 (D.D.C.

2017) ("After three rounds of briefing and a lengthy oral argument, however, the [agency] has not even argued that such an explanation exists."). Earlier in this litigation, Defendants pointed to the BOP's "requirement to consider security concerns in their placement of offenders, and the underlying violence of the offense[s] committed by D.C. Code Offenders which is a highly relevant distinction between the two populations." *Love*, 2025 WL 105845, at *3 (alteration in original). Although the court did not ultimately evaluate the merits of this explanation, *see id.* at *12, it expressed skepticism at the motions hearing, *see* Tr., ECF No. 38, at 14:2-14, and Defendants have abandoned this position on summary judgment, *see generally* Defs.' Mem. Defendants have not put forward any alternative explanation.

To be sure, although they do not grapple with the PS 5100.08's more severe impacts on D.C. Code Offenders, Defendants do attempt to justify having two separate scoring systems. Defendants explain that the BOP "does not receive the same information from the D.C. Superior Court as it does from federal courts in the case of federal offenders." Defs.' Mem. at 33. So, they say, it would be "extraordinarily burdensome" to require the BOP to calculate each D.C. Code Offender's criminal history score under the Guidelines based on the information it receives. Defs.' Reply at 9. Mind you, Defendants offer no proof that explains why scoring D.C. Code Offenders and federal offenders the same way would be "extraordinarily burdensome." Their contention is therefore impossible to evaluate. In any event, an agency "certainly is allowed to take administrative convenience into account." *Clinton Mem'l Hosp. v. Shalala*, 10 F.3d 854, 860 (D.C. Cir. 1993). But it may "rationally" rest its decision on that basis only "where no fundamental injustice is caused." *Ashland Expl., Inc. v. FERC*, 631 F.2d 817, 822 (D.C. Cir. 1980); *accord Gulf Oil Corp. v. Hickel*, 435 F.2d 440, 446 (D.C. Cir. 1970). A system that disproportionately places a class of individuals in more dangerous, less rehabilitative facilities for

23

no reason other than that the District of Columbia prepares their PSRs differently works a fundamental injustice. *See* Defs.' Mot. Mem. at 22. That the system may be more easily administrable is therefore not enough to save it from being arbitrary and capricious. *Cf. Ill. Pub. Telecomm. Ass'n v. FCC*, 117 F.3d 555, 565 (D.C. Cir. 1997) ("[E]ven assuming, *arguendo*, that the [agency's action] marginally increases administrative convenience, this [action] comes at a huge cost."), *decision clarified on rh'g*, 123 F.3d 693 (D.C. Cir. 1997). This explanation is therefore not a "rational" one that reflects "reasoned decisionmaking."

Unable to justify the two-tiered system, Defendants take a different tack. They contend that Plaintiff's arguments "suffer from a fatal premise" that PS 5100.08 treats D.C. Code Offenders—the "sole members" of the class—"differently." Defs.' Mem. at 22. Defendants point out that PS 5100.08 "differentiates not on the basis of D.C. Code offenses versus federal offenders," but rather on whether the individual has received a Guidelines criminal history score or not, so some other groups of individuals are subject to PS 5100.08's scoring system as well. *Id.* The court is unmoved. Regardless of who else is subject to the policy, D.C. Code Offenders are scored more harshly than the vast majority of the BOP population. In enacting this scoring system, the BOP "failed to consider" that "important aspect of the problem," let alone rationally explain it. *State Farm*, 463 U.S. at 29. That renders its decision arbitrary and capricious. Pointing to other categories of individuals to whom the policy also applies does not correct this fundamental flaw.[10]

---

[10] Moreover, "plaintiffs are 'masters of the complaint' with the power to bring those claims as they see fit." *de Csepel v. Republic of Hungary*, 714 F.3d 591, 598 (D.C. Cir. 2013) (quoting *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 395 (1987)). Plaintiff's choice to bring this claim on behalf of all D.C. Code Offenders, rather than all individuals subject to the challenged scoring system, does not doom his claim. It is not the court's role to second-guess Plaintiff's litigation decisions. It is enough that the court can find a violation as to the class Plaintiff represents.

24

The court therefore concludes that the scoring system outlined in PS 5100.08 is arbitrary and capricious as applied to D.C. Code Offenders.[11]

## IV.    CONCLUSION AND ORDER

For the foregoing reasons, the court grants Plaintiff's Motion for Class Certification and Appointment of Class Counsel, ECF No. 4.  The court certifies the following class: All individuals who were or will be sentenced by the Superior Court of the District of Columbia for D.C. Code felony offenses and who are or will be in the custody of the Bureau of Prisons pursuant to such sentence.  The court certifies Plaintiff Artavious Love as class representative and appoints counsel from the Public Defender Service for the District of Columbia as class counsel.

The court also grants Plaintiff's Motion for Summary Judgment, ECF No. 42, and denies Defendants' Cross-Motion to Dismiss or, in the Alternative, for Summary Judgment, ECF No. 47.

The court defers imposition of a remedy, including Plaintiff's request for prospective injunctive relief.  In their recent filings, Defendants have represented that a "revised Program Statement . . . is nearing finalization," Smith Decl. ¶ 6, that "will completely and irrevocably eradicate the effects of the prior version of the Program Statement," Defs.' Reply at 2, but they have made no representation of actual finality since.  The court therefore requires further information about the status of PS 5100.08 before devising a remedy.  The parties shall file a Joint

---

[11] As a result, the court does not reach Plaintiff's remaining substantive and procedural APA claims.  *See, e.g.*, *Gomez v. Trump*, 485 F. Supp. 3d 145, 195 (D.D.C. 2020) (declining to reach the notice-and-comment issue after deciding a rule was likely arbitrary and capricious in part because "[a] ruling on this issue would provide Plaintiffs no additional relief than they will otherwise receive").  Nor does it reach Plaintiff's constitutional claim.  *See, e.g.*, *Bd. of Cnty. Comm'rs v. Fed. Hous. Fin. Agency*, 754 F.3d 1025, 1031 (D.C. Cir. 2014) ("Federal courts should not decide constitutional questions unless it is necessary to do so." (cleaned up)).

Status Report by June 29, 2026, which updates the court on the status of the BOP's revisions to

PS 5100.08.  The court will determine a path forward after receiving the Joint Status Report.

Dated:  June 15, 2026

                                                    Amit P. Mehta
                                             United States District Judge